UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

MICHAEL JONES,

               Plaintiff,

      v.                                    20-CV-1682-LJV
                                             ORDER

D.O.C.C.S., *et al.*,

               Defendants.

───────────────────────────────

## <u>INTRODUCTION</u>

The *pro se* plaintiff, Michael Jones, is a prisoner currently confined at the Wende Correctional Facility ("Wende").  He asserts claims under 42 U.S.C. § 1983 and alleges that the defendants violated his constitutional rights while he was incarcerated at Great Meadows Correctional Facility ("Great Meadows") and Wende.  Docket Item 1.  He also has moved to proceed *in forma pauperis* (that is, as a person who should have the prepayment of the ordinary filing fee waived because he cannot afford it).  Docket Item 7.  And he has requested a protective order and to be transferred to the "Alternative Protection Programming Unit" at Clinton Correctional Facility ("Clinton").  Docket Item 9; *see also* Docket Item 1 at 11.

Because Jones meets the statutory requirements of 28 U.S.C. § 1915(a) and has filed the required authorization and certification, Docket Item 7, the Court grants his motion to proceed *in forma pauperis*.  Therefore, under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a), the Court screens the complaint.

For the following reasons, Jones's claims related to his confinement at Great Meadows are severed and transferred to the United States District Court for the Northern District of New York.  As for Jones's claims arising out of his confinement at Wende, some may proceed, some are dismissed under sections 1915(e)(2)(B) and 1915A, and some will be dismissed under those same sections unless he files an amended complaint correcting the deficiencies addressed below.  His requests for a protective order and transfer are denied without prejudice.

## DISCUSSION

Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims."  *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)).  The court shall dismiss a complaint in a civil action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental entity, if the court determines that the action (1) fails to state a claim upon which relief may be granted or (2) seeks monetary relief against a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915A(b)(1)-(2).

Generally, the court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim."  *Abbas*, 480 F.3d at 639 (citation omitted); *see also Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("A *pro se* complaint is to be read liberally.  Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." (quoting *Gomez v. USAA Fed.*

2

*Sav. Bank,* 171 F.3d 794, 795 (2d Cir. 1999))).  But leave to amend pleadings may be denied when any amendment would be "futile."  *Id.*

## I.   SCREENING THE COMPLAINT

In evaluating a complaint, the court accepts all factual allegations as true and draws all inferences in the plaintiff's favor.  *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999).  "Specific facts are not necessary," and the plaintiff "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 293 (2007) (alteration in original) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Boykin v. Keycorp*, 521 F.3d 202, 213 (2d Cir. 2008) ("[E]ven after *Twombly*, dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases.").  Although "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir. 2004), even pleadings submitted *pro se* must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure, *see Wynder v. McMahon*, 360 F.3d 73, 76 (2d Cir. 2004).

Jones has sued the defendants for violations of his First, Eighth, and Fourteenth Amendment rights.  A liberal reading of the complaint tells the following story.[1]

---

[1] Jones has attached "evidence" to his complaint, consisting of grievance documents and other correspondence with DOCCS.  *See* Docket Item 1.  These documents are part of the pleading and therefore are considered in this screening order. *See Cooper v. Dennison*, 2011 WL 1118685, at *1 (W.D.N.Y. Mar. 24, 2011) (In ruling on a 12(b)(6) motion to dismiss, "[d]ocuments that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered."); *see also Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d

Jones was confined at Great Meadows between July 2019 and February 2020.
Docket Item 1 at 7.  During that time, Jones was "denied [his] right to send mail to his
family" and denied his legal mail, *id.* at 7, 10; had his mail and other property stolen by
prison officials, *id.* at 7, 12-13; was "denied proper medical care for [his] legs and denied
hearing aids to assist [his] hearing," *id.* at 7; was "harassed and discriminated against
because of" his race, religion, and sexual orientation, *id.* at 7, 13; and was "confined to
[the] SHU for over 30 days for no reason" after being denied due process at a
disciplinary hearing, *id.* at 7-8.

In February 2020, Jones was transferred to Wende.  *Id.* at 8.  While at Wende,
Jones was "punished and harassed for [his] political beliefs, [and] discriminated against
for being a [d]emocrat."  *Id.*  For example, on November 5, 2020, Officer Hyland
"harassed [Jones] for cheering for Joe Biden" in the presidential election.  *Id.* at 14.
Hyland "cursed [Jones] out and told [him] to shut the f[***] up because of [his] cheering
[B]iden."  *Id.* at 89.  Hyland "then went in [Jones's] cell and destroyed [Jones's] property
[because of Jones's] political beliefs."  *Id.*  Jones, who is Black, bisexual, and Jewish,
also was discriminated against and harassed by prison staff because of his race, sexual
orientation, and religion.  *Id.* at 8, 11.

Jones contracted COVID-19 at Wende "because of [Wende's] . . . mishandling of
[the virus]."  *Id.* at 16.  While Jones was sick, he was "placed in a cell full of [another

---

Cir. 1991) ("[T]he complaint is deemed to include any written instrument attached to it
as an exhibit or any statements or documents incorporated in it by reference.").

prisoner's] fecal matter." *Id.*  Jones "was forced to clean up this fecal matter," and "one

of the officers said [to Jones that] he hope[d Jones] died in the cell."[2]  *Id.*

Jones also "had [an] open bullet wound during the time [he] had [COVID-19,

which] became infected." *Id.* at 68.  Jones "was not given the proper medical attention"

to treat the bullet wound.  *Id.*  He "asked for help[, but] all [the nurse] could do was

bring[ Jones's] cleaning cell side, [and he] needed medication."  *Id.*  And while Jones

was sick, "for weeks [his] mail would not leave the facility," and he was denied "access

to the courts and . . . access to the law library."  *Id.* at 9.

At one point, Jones had a disciplinary hearing.  *Id.* at 70-71.  The hearing officer,

D.S.P. Gabel,[3] "was not impartial and [she] participated in the investigation."  *Id.*  Gabel

"asked questions to a witness that [Jones] did not ask[,] and after this witness was

questioned by [Gabel, she] refused to call [Jones's] other[] witness."  *Id.*

Jones then was confined in the SHU for more than a month.[4]  *Id.* at 15.  He did

not have a mattress or sheets and instead was forced to sleep on either the metal bed

---

[2] Jones has adequately stated an unconstitutional-conditions-of-confinement claim, but Jones does not specify whether those who confined him are among the named defendants.  The Court liberally construes the complaint as bringing an unconstitutional-conditions-of-confinement claim at least against the John Doe officer who forced Jones to clean up another inmate's fecal matter and told Jones "he hope[d Jones] died."  *See* Docket Item 1 at 16.  The Clerk of the Court therefore shall add John Doe as a defendant to the case's electronic docket.  If John Doe is one of the named defendants, Jones should say so in any amended complaint; if not, then Jones should provide enough information to identify John Doe as addressed below.

[3] Jones does not name Gabel as a defendant, but he has adequately stated a procedural-due-process claim against her.  The Clerk of the Court therefore shall add Gabel to the case's electronic docket as a defendant.

[4] Jones does not specify exactly how long he was confined in the SHU or how long he was without a mattress, but he does say that "[he] complained about [not having a] 'mattress'" "for a month."  Docket Item 1 at 15.

frame or "on a ball of cotton."  *Id.*  "Hyland wrote [Jones] a misbehavior report for destroying the mattress, [but] this misbehavior report was dismissed because it was a lie."  *Id.*  Although the report made staff aware that Jones was sleeping on either the frame or a "cotton ball," he still "was not given a mattress."  *Id.*  "This living condition caused [Jones] los[s] of sleep, problems with impulse control, [d]ifficulty with concentration and thinking, panic attacks and hallucinations[, and] back pain."  *Id.*

Moreover, while in the SHU, Jones was "not [] afforded the opportunity to wear or use [his] leg braces or [his] medical boots," which caused him "severe pain in [his] legs and feet."  *Id.* at 90.  Jones asked to go to physical therapy and for replacement hearing aids—both of which were medically necessary—but his requests were denied.  *Id.* at 88.

Wende officials also violated Jones's right to due process when they decided his property claim and destroyed his property "over [and] over."  *Id.* at 11.  The Wende staff has been harassing Jones ever since he filed a Prison Rape Elimination Act complaint against the prison.  *Id.* at 96.

Jones "still ha[s] more to add to [his] claim," but he ran out of paper.  *Id.* at 9.  He does not feel safe at Wende, and he has asked his Court to issue a protective order and contact "movement and control in Albany and have them place" him in a special program at Clinton.  Docket Item 9 at 1; Docket Item 1 at 11.

## II.    SECTION 1983 CLAIMS

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States."  *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir.

1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)).  "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against a prison official under section 1983, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'"  *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (citing *Iqbal*, 556 U.S. at 676).  It is not enough to assert that the defendant is a "link[] in the prison['s] chain of command."  *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004).  Moreover, the theory of *respondeat superior* is not available in a section 1983 action.  *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003).  Instead, "[t]he violation must be established against the supervisory official directly."  *Tangreti*, 983 F.3d at 618.

## A.    Great Meadows Claims

Under 28 U.S.C. § 1391(b), a civil action may be brought in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).  When a case is filed in a district in which venue is inappropriate, the court "shall dismiss [the case], or if it be in the interest of

justice, transfer such case to any district . . . in which it could have been brought."

28 U.S.C. § 1406(a).

Moreover, a court may sever any claims brought in an inappropriate

district and transfer those claims to the appropriate venue. *See* Fed R. Civ. P.

21; *Cain v. New York State Bd. of Elections*, 630 F. Supp. 221, 225-26 (E.D.N.Y.

1986) ("Where the administration of justice would be materially advanced by

severance and transfer, a court may properly sever the claims against one or

more defendants for the purpose of permitting the transfer of the action against

other defendants.").  "A claim may be severed based upon lack of a significant

relationship between defendants or solely for the purpose of facilitating transfer."

*Id.* at 225.   In deciding whether to sever a claim, the Court should consider:

> (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims.

*Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 580 (E.D.N.Y. 1999).

Great Meadows is located in Washington County, New York, which is in the

Northern District of New York.  Because that is where the events giving rise to the

claims involving Great Meadows occurred, and presumably where the defendants

reside, the Northern District of New York is the appropriate venue for Jones's claims

against the Great Meadows defendants.  *See* 28 U.S.C. §§ 1391(b); 1406(a).

Moreover, because the allegations involving Great Meadows are unrelated to and

involve different defendants than the Wende allegations, the Great Meadows claims will

require different witnesses and documentary evidence to resolve them.  *See Morris*, 37

F. Supp. 2d at 580. So transferring the Great Meadows claims to the Northern District of New York is in the interests of justice and judicial economy. *See id.*

The claims relating to Jones's incarceration at Great Meadows, and the defendants against whom those claims are brought—Superintendent Miller, "Greatmeadow [sic] Corrections," and "Medical Staff at Greatmeadows [sic]"—therefore are severed from the complaint and transferred to the Northern District of New York.[5] This Court leaves any decisions about the sufficiency of Jones's claims related to Great Meadows to that court.

### B.    Wende Claims

#### 1.    Official-Capacity Claims

"The Eleventh Amendment precludes suits against states unless the state expressly waives its immunity or Congress abrogates that immunity." *Li v. Lorenzo*, 712 F. App'x 21, 22 (2d Cir. 2017) (summary order) (citing *CSX Transp., Inc. v. N.Y. State Office of Real Prop. Servs.*, 306 F.3d 87, 94-95 (2d Cir. 2002)). Under section 1983, a claim for money damages against a state official in his or her official capacity "is in effect a claim against the governmental entity itself." *Lore v. City of Syracuse*, 670 F.3d 127, 164 (2d Cir. 2012) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978)). Because "New York has not waived its immunity, nor has Congress abrogated it," *Li*, 712 F. App'x at 22 (citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d

---

[5] The Court does not have enough information to determine whether defendants "Dept of Security Brown," Docket Item 1 at 1, and "Dept of Administration Lowerre," *id.*, are employed at Great Meadows or Wende. If Brown or Lowerre are employed at Wende, Jones may name them as defendants in an amended complaint, making sure to specify what role each had in causing his alleged injuries.

35, 38-40 (2d Cir. 1977); *Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990)),

the Eleventh Amendment bars official-capacity suits for money damages against New

York State and its officials in their official capacity, *see Kentucky v. Graham*, 473 U.S.

159, 169 (1985).

Jones has sued several defendants in their individual and official capacities.

Docket Item 1 at 4.  He does not specify whether those defendants are from Great

Meadows or Wende, and he also does not specify whether he intended to sue the other

defendants in both their individual and official capacities.  Regardless, Jones's official-

capacity claims against all Wende defendants are barred by the Eleventh Amendment

and dismissed without leave to amend.  *See Cuoco*, 222 F.3d at 112 (explaining that

leave to amend pleadings may be denied when any amendment would be "futile").

### 2.  Mail Interference (First Amendment Claim)

"Under the First Amendment, prisoners have a right to the free flow of incoming

and outgoing mail."  *Johnson v. Goord*, 445 F.3d 532, 534 (2d Cir. 2006) (citations and

marks omitted).  "A prisoner's right to receive and send mail, however, may be

regulated."  *Id.*  Such regulations are valid so long as they are reasonably related to

legitimate penological interests.  *Id.*  "Thus, 'the regulation of inmates' mail by state

prison officials is a matter of internal prison administration with which courts will not

interfere, absent a showing of a resultant denial of access to the courts or of some other

basic right retained by a prisoner."  *Angulo v. Nassau County*, 89 F. Supp. 3d 541, 553

(E.D.N.Y. 2015) (citation and marks omitted).

Jones has plausibly alleged that Wende prison officials unconstitutionally

interfered with his mail.  Indeed, he alleges not only that they interfered with his mail but

10

that this interference involved his requests regarding, and access to, the law library. *See, e.g.*, Docket Item 1 at 96.  Nevertheless, Jones's mail-interference claim is subject to dismissal because he has not specified the individual or individuals responsible for this alleged injury.

Because of his *pro se* status, Jones may amend his complaint to identify which officers were involved in the alleged interreference with his mail.  *See Trangreti*, 983 F.3d at 618.  He can do this by naming the involved officers and explaining their roles in causing his claimed injuries.  More specifically, in the "Prisoner Complaint Form," Jones should name any person he wishes to sue in the "Caption of Action" (page one) and the "Parties to This Action: Defendant's Information Note" (page two).  If Jones does not know the names of the officers, he may name them as John or Jane Does, but he should provide enough information—*e.g.*, position or job title, shift and location worked, physical description, etc.—to enable DOCCS to identify them.  *See Valentin v. Dinkins*, 121 F.3d 72, 76 (2d Cir. 1997) (per curiam).

### 3.  Inadequate Medical Care (Eighth Amendment Claim)

A claim of inadequate medical care rises to the level of a constitutional violation only when a defendant, operating under color of law, was deliberately indifferent to the plaintiff's serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *see also Ross v. Kelly*, 784 F. Supp. 35, 43-44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir. 1992).  "A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'"  *Harrison v. Barkley*, 219 F.3d 132, 136-137 (2d Cir. 2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (citation omitted)).  "Factors that

have been considered include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance*, 143 F.3d at 702 (internal marks omitted) (citing *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *accord*, *Gutierrez v. Peters*, 111 F.3d 1364, 1371 (7th Cir. 1997)).

"[N]ot every lapse in prison medical care will rise to the level of a constitutional violation." *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003). An isolated failure to provide medical treatment, without more, is generally not actionable unless the surrounding circumstances suggest a degree of "deliberate[ness]," rather than inadvertence, in the failure to render meaningful treatment. *See Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987). The prison official must "know[] of and disregard[] an excessive risk to inmate health or safety . . . [and] be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmers v. Brennan*, 511 U.S. 825, 837 (1994).

Jones has plausibly stated a claim for inadequate medical care. He alleges that he was treated inadequately (and even forced to clean up another prisoner's feces) while sick with COVID-19; denied necessary medication for an infected bullet wound; and denied medically necessary leg braces, medical boots, and hearing aids while in the SHU. *See* Docket Item 1 at 9, 88, 90. He also alleges that prison staff knew of the risks that each of those posed to his health, *id.*, which is enough at this stage to allege deliberate indifference, *see Farmers*, 511 U.S. at 837.

But Jones again has not alleged the individual or individuals responsible for denying him adequate medical care.  His claim for inadequate medical care therefore is subject to dismissal.  Nevertheless, Jones may amend his complaint to specify who was involved in denying him medical care and to name them in the "Prisoner Complaint Form" as described above.  If Jones does not know the officer's or officers' names, he may name them as John or Jane Does, but he should provide sufficient information to allow DOCCS to identify them.  *See Valentin*, 121 F.3d at 76.

### 4. Race, Religion, and Sexual Orientation Discrimination (Fourteenth Amendment Claim)

A state and its instrumentalities may not deny "any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV.  At its core, the Equal Protection Clause prohibits the government from treating similarly situated persons differently.  *See City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985); *Sound Aircraft Services, Inc. v. Town of East Hampton*, 192 F.3d 329, 335 (2d Cir. 1999).  But generalized allegations alone are insufficient to make out an equal protection claim.  *See Crawford-El v. Britton*, 523 U.S. 574, 592 (1998) ("When intent is an element of a constitutional violation, [] the primary focus is not on any possible animus directed at the plaintiff; rather, it is more specific, such as an intent to disadvantage all members of a class that includes the plaintiff.").

Jones has not stated a plausible discrimination claim here.  While he alleges that he was harassed and discriminated against because of his race, religion, and sexual orientation, he has made only conclusory allegations and has not described how he was discriminated against.  *See id.*  This claim therefore is subject to dismissal.

Nevertheless, in light of his *pro se* status, Jones may amend his complaint to allege what happened to him—more specifically, how he was treated differently than other prisoners, and thereby injured, *because of* his race, sexual orientation, or religion. Jones also should specify who discriminated against him and what they did, and he should identify those individuals on the "Prisoner Complaint Form" either by name or as John or Jane Does with sufficient descriptive information, as outlined above.

### 5. Due Process in Disciplinary Hearings (Fourteenth Amendment Claim)

To state a due process claim with respect to a prison disciplinary hearing, a prisoner-plaintiff must allege that (1) "the confinement or restraint complained of create[d] an 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life,'" *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)); and (2) "the state ha[d] granted its [prisoners], by regulation or by statute, a protected liberty interest in remaining free from that confinement or restraint," *id.* (quoting *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996)).

The prisoner then must show that in imposing the confinement or restraint, the defendant denied the prisoner some aspect of the process he was due, namely "[i] advance written notice of the charges; [ii] a fair and impartial hearing officer; [iii] a reasonable opportunity to call witnesses and present documentary evidence; [and iv] a written statement of the disposition, including supporting facts and reasons for the action taken." *See Luna v. Pico*, 356 F.3d 481, 487 (2d Cir. 2004) (citation omitted); *see also id.* at 488 ("[T]he requirements of due process are satisfied if *some*

14

*evidence* supports the decision by the prison disciplinary board." (alteration in original) (quoting *Superintendent v. Hill*, 472 U.S. 445, 455 (1985))).

Jones has adequately alleged that Gabel, the hearing officer at his disciplinary hearing, denied him due process of law.  Jones alleges that Gabel was not "a fair and impartial hearing officer"; indeed, he specifically alleges that she participated in the investigation and prevented him from calling a favorable witness at the hearing.  See Docket Item 1 at 70-71.

The discipline imposed—at least one month in the SHU in unusually difficult conditions—might constitute an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life."  *See Cruz*, 202 F.3d at 597 (citation omitted).  Although the Second Circuit has found that "SHU confinements of fewer than 101 days" generally can meet this threshold only "if the conditions were more severe than the normal SHU conditions . . . or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical," it also has "explicitly avoided a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights."  *Palmer v. Richards*, 364 F.3d 60, 64-65 (2d Cir. 2004) (emphasis added).  And here, Jones has alleged that his confinement in the SHU was in conditions that were "more severe than normal."  *See id.*  Indeed, Jones alleges that while in the SHU, he was forced to sleep on a bare metal bed frame, or alternatively on a "ball of cotton," for at least one month, Docket Item 1 at 15, and that he was denied

medically-necessary leg braces and hearing aids while in the SHU, *id.* at 88, 90.[6]
Jones's due process claim against Gabel therefore may proceed.

### 6. Retaliation Claim (First Amendment)

To establish a claim for retaliation under section 1983, a plaintiff must show that
(1) he engaged in constitutionally protected speech or conduct, (2) the defendants took
adverse action against him, and (3) there was a causal connection between the
protected speech or conduct and the adverse action. *Espinal v. Goord*, 558 F.3d 119,
128 (2d Cir. 2009); *see also Gill*, 824 F.2d at 194 ("[A] claim for relief may be stated
under section 1983 if otherwise routine administrative decisions are made in retaliation
for the exercise of constitutionally protected rights." (citing *Purcell v. Coughlin*, 790 F.2d
263, 265 (2d Cir. 1986) (per curiam))).  To prove the final prong, the plaintiff "bears the
burden of showing . . . that the protected conduct was a substantial or motivating factor
in the prison officials' decision to [take the action they did against the] plaintiff."  *Graham
v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (citing *Mount Healthy Sch. Dist. v. Doyle*,
429 U.S. 274, 287 (1977)).  The plaintiff may rely on circumstantial evidence to prove
causation.  *See Colon v. Coughlin*, 58 F.3d 865, 872-73 (2d Cir. 1995); *see also
Espinal*, 558 F.3d at 129 ("A plaintiff can establish a causal connection that suggests
retaliation by showing that protected activity was close in time to the adverse action.").

 "Ordinarily a plaintiff can survive a motion to dismiss based on the pleadings so
long as he has alleged facts, that if proven, would support a cause of action."  *Johnson
v. Eggersdorf*, 8 F. App'x 140, 144 (2d Cir. 2001) (summary order).  "However, because

---

[6] To the extent that Jones alleges a conditions-of-confinement claim based on his
time in the SHU, it is addressed below.

of the 'ease with which claims of retaliation may be fabricated, [courts] examine

prisoners' claims of retaliation with skepticism and particular care.'"  *Id.*  (quoting *Colon*,

58 F.3d at 872).  "Because of the potential for abuse, '[courts] insist[] on a higher level

of detail in the pleadings.'"  *Id.*  (quoting *Gill*, 824 F.2d at 194).  In the Second Circuit,

> prisoner retaliation claims [fall] into three categories: (1) "a retaliation claim supported by specific and detailed factual allegations which amount to a persuasive case [and] ought usually to be pursued with full discovery["]; (2) "a complaint which alleges facts giving rise to a colorable suspicion of retaliation[, and] will support at least documentary discovery["]; [or] (3) "a complaint which alleges retaliation in wholly conclusory terms [and] may safely be dismissed on the pleadings alone[.  In the final category], the prisoner has no factual basis for the claim other than an adverse administrative decision and the costs of discovery should not be imposed on defendants."

*Id.* (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

Jones has plausibly stated a claim for retaliation again Hyland.  Jones alleges

that after Jones voiced his support for President Biden, Hyland cursed at Jones and

then went into Jones's cell and destroyed his property.  *See* Docket Item 1 at 14, 89.

Jones therefore has adequately alleged that he engaged in a constitutionally protected

activity, that Hyland took adverse action against him, and that there was a causal

connection between the two.  See *Espinal*, 558 F.3d 119 at 128.  Jones's retaliation

claim against Hyland therefore may proceed.[7]

---

[7] To the extent Jones alleges a general harassment claim under the Eighth Amendment against Hyland or anyone else based on verbal abuse, that claim is dismissed with leave to amend.  *See Gill v. Hoadley*, 261 F. Supp. 2d 113, 129 (N.D.N.Y. 2003) (A claim brought under section 1983 is "not designed to rectify harassment or verbal abuse.").  Allegations of verbal abuse, without more, generally fail to state an actionable claim under the Eighth Amendment.  *Rosales v. Kikendall*, 677 F. Supp. 2d 643, 648 (W.D.N.Y. 2010) (citing *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986)); *Carpio v. Walker*, 1997 WL 642543, at *6 (N.D.N.Y. Oct. 15, 1997) ("Verbal harassment alone, unaccompanied by any injury, no matter how inappropriate,

### 7.  Conditions of Confinement (Eighth Amendment Claim)

To state a claim for unconstitutional conditions of confinement, a plaintiff must allege "(1) that the deprivation alleged [was] 'objectively sufficiently serious' such that [he] was denied 'the minimal civilized measure of life's necessities,' and (2) that the defendant official possessed a 'sufficiently culpable state of mind' associated with 'the unnecessary and wanton infliction of pain.'"  *Trammell v. Keane*, 338 F.3d 155, 161 (2d Cir. 2003) (quoting *Farmer v. Brennan,* 511 U.S. 825, 834 (1994)).  But the Eighth Amendment "does not mandate comfortable prisons."  *Davidson v. Conway*, 318 F. Supp. 2d 60, 62 (W.D.N.Y. 2004) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).  "'Normal' conditions of SHU confinement," in particular, "do not amount to an Eighth Amendment violation."  *Hattley v. Goord*, 2006 WL 785269, at *5-6 (S.D.N.Y. March 27, 2006) (citing *Shannon v. Selsky*, 2005 WL 578943, at *6 (S.D.N.Y. Mar. 10, 2005); *see also Gulley v. Roach*, 2004 WL 2331922, at *11 (W.D.N.Y. Oct. 15, 2004) (finding that a prisoner "merely subjected to normal SHU confinement" cannot establish an Eighth Amendment claim).

Read liberally, the complaint adequately states a claim against John Doe and Hyland for unconstitutional conditions of confinement.  The complaint alleges that while Jones was sick with COVID-19 and housed in a cell that was covered in another prisoner's feces, John Doe forced him to clean up the feces.  Docket Item 1 at 16.  The complaint also alleges that while Jones was confined in the SHU, Hyland forced him to sleep without a mattress on a bare metal frame.  *Id.* at 15.  And the complaint alleges

---

unprofessional, or reprehensible it might seem, does not rise to the level of an Eighth Amendment violation.").

that both John Doe and Hyland knew of the conditions they were subjecting Jones to—

indeed, John Doe told Jones he "hope[d Jones] died in the cell."  *Id.* at 16.

At this early stage of the litigation, therefore, Jones has alleged that John Doe

and Hyland subjected him to unconstitutional conditions of confinement and had

sufficiently culpable states of mind.  *See Trammell*, 338 F.3d at 161.  If Jones intends to

bring a claim for unconstitutional conditions of confinement against any other defendant,

he may amend the complaint to name any other involved officers on the "Prisoner

Complaint Form" as specified above and describe how those officers subjected him to

unconstitutional conditions of confinement.

### 8.  Access to the Courts

"It is well established that all persons enjoy a constitutional right of access to the

courts, although the source of this right has been variously located in the First

Amendment right to petition for redress[;] the Privileges and Immunities Clause of

Article IV, section 2[;] and the Due Process Clauses of the Fifth and Fourteenth

Amendments."  *Monsky v. Moraghan*, 127 F.3d 243, 246 (2d Cir. 1997) (citations

omitted).  To state a denial-of-access claim, a prisoner must show that:

> (1) he suffered an "actual injury," [*Lewis v. Casey*, 518 U.S. 343, 349
> (1996)], (2) to a non-frivolous legal claim, (3) concerning his criminal
> conviction, habeas corpus petition, or conditions of confinement.  *Id.* at 352-
> 54.  Actual injuries include the dismissal of a complaint for a technical
> deficiency that would have been cured with appropriate legal facilities, or
> that a prisoner was "stymied" from bringing an arguably actionable claim by
> the "inadequacies of the law library."  *Id.* at 351.

*Kaminski v. Semple*, 2019 WL 6904145 (2d Cir. Dec. 18, 2019) (summary order).  A

prisoner also must "show that the defendant's conduct was deliberate and malicious."

*Collins v. Goord*, 581 F. Supp. 2d 563, 573 (S.D.N.Y. 2008) (citing *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003)).

Jones has not adequately stated a denial-of-access claim.  He alleges that he was consistently denied access to the law library and to the courts, but he does not say how he was denied that access or what injury that alleged denial caused him.  He also does not allege who denied him access to the law library or courts.  Jones's denial-of-access claim therefore is subject to dismissal.

Nevertheless, and again in light of his *pro se* status, Jones may amend his complaint to allege, if possible, that he suffered an actual injury regarding a non-frivolous legal claim, who was responsible for that injury, and how they were responsible.  Again, Jones should be sure to name any officials responsible for his injury on the "Prisoner Complaint Form," as previously described.

### 9.  Destruction of Property

Read liberally, the complaint alleges that Jones's property was lost or destroyed and that his claim regarding lost or destroyed property was wrongfully denied, denying him due process of law.  *See* Docket Item 1 at 11, 56, 60, 66-67, 89.  To the extent Jones alleges that prison officials' destruction of his property violated his due process rights, that claim is not cognizable in this section 1983 action.

> [A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available.

*Hudson v. Palmer*, 468 U.S. 517, 533 (1984).  New York provides such a remedy in section 9 of the New York Court of Claims Act.  *Love v. Coughlin*, 714 F.2d 207, 208-09 (2d Cir. 1983); *see also Wahid v. Mogelnicki*, 406 F. Supp. 3d 247, 249 (E.D.N.Y. 2017)

("Courts addressing this issue have dismissed federal claims for deprivation of property without due process of law, reasoning that New York has adequate state post-deprivation remedies."). Jones's due process claim for deprivation of property therefore is dismissed with prejudice, because any amendment would be "futile." *See Cuoco*, 222 F.3d at 112.

To the extent Jones alleges Wende violated its procedures in deciding his property claim, that claim also is not cognizable in this section 1983 case. There is no constitutional right to access to an inmate grievance program. *Shell v. Brzezniak*, 365 F. Supp. 2d 362, 370 (W.D.N.Y. 2005); *see also Davis v. Buffardi*, 2005 WL 1174088, at *3 (N.D.N.Y. May 4, 2005) ("[P]articipation in an inmate grievance program is not a constitutionally protected right."). Because "inmate grievance programs created by state law are not required by the Constitution[,] . . . allegations that prison officials violated those procedures do not give rise to a cognizable [section] 1983 claim." *Shell*, 365 F. Supp. at 370. Instead, if "prison officials ignore a grievance that raises constitutional claims, [a prisoner] can directly petition the government for redress of that claim."[8] *Id.* And as just explained, Jones's grievance for destruction of his property can be adequately resolved by New York law—more specifically, a claim in the New York State Court of Claims under section 9 of the New York Court of Claims Act. This claim therefore is dismissed with prejudice.

---

[8] For this reason, Jones's claim that his grievances in general were not responded to, Docket Item 1 at 11, also is not cognizable and is dismissed with prejudice.

### C.    John Doe Defendant

With respect to the unconstitutional-conditions-of-confinement claim asserted against John Doe, and pursuant to *Valentin*, *supra*, DOCCS shall ascertain the full name of John Doe and shall provide an address where John Doe may be served. DOCCS need not undertake to defend or indemnify this individual at this juncture. This order merely provides a means by which Jones may name and properly serve the defendants as instructed by the Second Circuit in *Valentin*.

DOCCS shall produce the information specified above regarding the identity of John Doe **within 35 days of the date of this order**. The information shall be forwarded to the *Pro se* Unit, United States District Court, 2120 Kenneth B. Keating Federal Building, 100 State Street, Rochester, New York 14614. Once this information is provided, Jones's complaint shall be deemed amended to reflect the name of the defendant in place of John Doe.

## III.    REQUEST FOR PRELIMINARY INJUNCTIVE RELIEF AND FOR TRANSFER

Jones says that he is "no longer safe in Wende." Docket Item 9 at 1. He says that he is "getting threats from the staff . . . [and that an] inmate told [him] that a[n] officer tried to pay [the inmate] to cut [Jones]." *Id.* He requests an "order of protection against [Wende]." *Id.* The Court construes his request as a request for a preliminary injunction to stop the defendants from retaliating against or otherwise harming him.

"A preliminary injunction is an equitable remedy and an act of discretion by the court." *Am. Civil Liberties Union v. Clapper*, 804 F.3d 617, 622 (2d Cir. 2015). "A party seeking a preliminary injunction must generally show a likelihood of success on the merits, a likelihood of irreparable harm in the absence of preliminary relief, that the

balance of equities tips in the party's favor, and that an injunction is in the public interest."  *Id.* (citing *Winter v. NRDC,* 555 U.S. 7, 20 (2008)).  When the moving party is unable to demonstrate a likelihood of success on the merits, a court still may issue a preliminary injunction if the moving party shows "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief."  *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979)).

Although Jones raises a colorable claim of retaliation against Hyland, Jones has not shown that he is likely to succeed on the merits of that claim.  Moreover, Jones's bare allegations neither raise "sufficiently serious questions" nor show that the "balance of hardships tip[s] decidedly" in his favor.  *See Citigroup Glob. Mkts., Inc.*, 598 F.3d at 35.  Therefore, Jones's request for preliminary injunctive relief is denied without prejudice.

Jones also asks this Court to contact "movement and control in Albany and have them place [him] in a program [at Clinton] called APPU," which "stands for Alternative Protection Programming Unit."  Docket Item 9 at 1.  The Court assumes that Jones is referring to the "Assessment Program and Preparation Unit" ("APPU") at Clinton, which is "a 'diagnostic and treatment program' to help victim-prone or fearful individuals develop inner strength and coping skills so as to be able to move back into the general population."  *See Hall v. Unknown Named Agents of N.Y. State Dept. for Correctional Services for APPU Unit at Clinton Prison*, 825 F.2d 642, 644 (2d Cir. 1987).  The Court,

however, lacks the authority to direct DOCCS to transfer Jones to Clinton, APPU, or any other facility or program—at least at this time.

"Generally, the Department of Correctional Services has the authority and discretion to determine where inmates should be housed[] and when transfers are appropriate." *Abbas v. Senkowski*, 2007 WL 2687669, at *2 (N.D.N.Y. Sept. 10, 2007) (citing *Tinsley v. Goord*, 2006 WL 2707324 (S.D.N.Y. Sept. 18, 2006)). "Appropriate candidates for APPU are identified by facility counselors who submit the transfer requests to the Office of Classification and Movement in Albany, New York." *Hall*, 82 F.2d at 644. Moreover, "[a] state prisoner has no liberty interest in being housed in a particular facility." *Cole v. Goord*, 2006 WL 3378145, at *1 (S.D.N.Y. Nov. 16, 2006) (citing *Matiyn v. Henderson*, 841 F.2d 31, 34 (2d. Cir. 1998). "In the absence of a violation of a federally protected right[, therefore] . . . there is no basis for a federal court to interfere in DOC[C]S' housing decisions." *Abbas*, 2006 WL 2687669, at *2.

Although Jones alleges that his constitutional rights are being violated at Wende, this action was commenced only recently, and the defendants have not yet answered the allegations in the complaint. The only facts upon which this Court may base its decision are Jones's bare allegations. At this stage, therefore, Jones has not established that his federally protected rights are being violated. His request that this Court order his transfer to APPU at Clinton therefore is denied without prejudice.

## CONCLUSION

Because Jones meets the statutory requirements of 28 U.S.C. § 1915(a) and has filed the required authorization, the Court grants his request to proceed *in forma pauperis*. Jones's claims arising from his confinement at Great Meadows against

Superintendent Miller, "Greatmeadow [sic] Corrections," and "Medical Staff at Greatmeadows [sic]" are severed and transferred to the Northern District of New York. Jones's claims against Gabel for due process violations, against Hyland for retaliation, and against Hyland and John Doe for unconstitutional conditions of confinement may proceed. But his claims for destruction of property and inadequate grievance procedures, as well as his official-capacity claims against all Wende defendants, are dismissed under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). His remaining claims will be dismissed under those same sections unless he files an amended complaint **within 60 days of the date of this order** that corrects the deficiencies noted above and otherwise complies with Rules 8 and 10 of the Federal Rules of Civil Procedure. Jones's requests for a preliminary injunction and transfer to Clinton are denied without prejudice.

Jones is advised that an amended complaint is intended to ***completely replace*** the prior complaint in the action and thus "renders [any prior complaint] of no legal effect." *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977)*; see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). Therefore, any amended complaint ***must include all allegations against each of the defendants*** so that the amended complaint stands alone as the only complaint that the defendants must answer in this action.

In the amended complaint, Jones should name all officers he intends to sue and explain their roles in causing his injuries. On the "Prisoner Complaint Form," Jones should name any person he wishes to sue in the "Caption of Action" (page one) and the "Parties to This Action: Defendant's Information Note" (page two). If Jones does not

know the names of the officers, he may name them as John or Jane Does, but he should provide enough information to allow DOCCS to identify them.

## ORDER

In light of the above, IT IS HEREBY

ORDERED that Jones's motion to proceed *in forma pauperis*, Docket Item 7, is GRANTED; and it is further

ORDERED that Jones's motion for a preliminary injunction and transfer, Docket Item 9, is DENIED without prejudice; and it is further

ORDERED that Jones's claims arising out of alleged wrongdoing that occurred at Great Meadows, and the defendants against whom those claims are asserted—Superintendent Miller, "Greatmeadow [sic] Corrections," and "Medical Staff at Greatmeadows [sic]"—are severed from this complaint and transferred to the United States District Court for the Northern District of New York; and it is further

ORDERED that Jones's claims for due process against Gabel, retaliation against Hyland, and unconstitutional conditions of confinement against Hyland and John Doe may proceed; and it is further

ORDERED that the Clerk of the Court shall add D.S.P. Gabel and John Doe as defendants to this action; and it is further

ORDERED that Jones's claims for destruction of property and grievance procedures, and his official-capacity claims against all Wende defendants, are dismissed with prejudice; and it is further

ORDERED that Jones may amend the remaining claims to correct the deficiencies noted above **within 60 days of the date of this order**; and it is further

ORDERED that the Clerk of the Court shall send Jones this order, a copy of the original complaint, a blank section 1983 complaint form, and the instructions for preparing an amended complaint; and it is further

ORDERED that if Jones does not file an amended complaint correcting the deficiencies noted above **within 60 days of the date of this order,** his claims for mail interference, inadequate medical care, discrimination, harassment, and denial of access to the courts will be dismissed without further order and the Clerk of the Court shall terminate the defendants other than Gabel, John Doe, and Hyland; and it is further

ORDERED that DOCCS shall provide the Court with the name and address of John Doe—or a statement of written reasons why such identification is improper or impossible—**within 35 days of the date of this order**; and it is further

ORDERED that DOCCS's failure to comply with this order may result in the Court's imposing sanctions under Rule 37 of the Federal Rules of Civil Procedure; and it is further

ORDERED that if Jones does not file an amended complaint correcting the deficiencies noted above **within 60 days of the date of this order**, the Clerk of the Court shall cause the United States Marshals Service to serve copies of the summons, complaint, and this order upon defendants Gabel, Hyland, and John Doe (once identified), without the plaintiff's payment therefor, unpaid fees to be recoverable if this action terminates by monetary award in the plaintiff's favor; and it is further

ORDERED the Clerk of the Court shall forward a copy of this order by email to Michael Russo, Assistant Attorney General in Charge, Buffalo Regional Office Michael.Russo@ag.ny.gov; and it is further

ORDERED that once served, the defendants shall answer the complaint or respond under 42 U.S.C. § 1997e(g); and it is further

ORDERED that Jones shall notify the Court in writing if his address changes. The Court may dismiss the action if Jones fails to do so.

SO ORDERED.

Dated:          May 11, 2021
                    Buffalo, New York


                                           _/s/ Lawrence J. Vilardo_____
                                           LAWRENCE J. VILARDO
                                           UNITED STATES DISTRICT JUDGE