UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

MICHAEL JONES,

          Plaintiff,

    v.                                                20-CV-1682-LJV
                                                          DECISION & ORDER
D.O.C.C.S, *et al.*,

          Defendants.

───────────────────────────────

On November 16, 2020, the *pro se* plaintiff, Michael Jones, commenced this action under 42 U.S.C. § 1983.  Docket Item 1.  He asserts claims arising from his confinement at the Wende Correctional Facility ("Wende") and alleges violations of his rights under the First, Eighth, and Fourteenth Amendments.  *Id.*

Jones has sued several Wende officials and employees: former Superintendent Stewart Eckert; Deputy Superintendent of Security Kevin Brown; Deputy Superintendent of Programs Betty Jo Gabel; Sergeant Frank Pfonner; Sergeant Robert Bizub; and Correction Officers Shawn Hyland, Scott Butcher, Anthony Killinger, Steven Ball, and Robert Janese.  Docket Items 1, 13, 25, 34; *see* Docket Item 35 at 1-2.  On November 30, 2022, the defendants moved to dismiss several of Jones's claims.  Docket Item 41.  On December 22, 2022, Jones responded.  Docket Item 43.  The defendants did not reply.

For the following reasons, the defendants' motion to dismiss is granted in part and denied in part.

## BACKGROUND[1]

Jones has "numerous health issues," including a hearing impairment, mental health issues, and pain in his back and legs that requires him to use "medical boots" and "leg braces." Docket Item 25 at 1, 4, 8. In February 2020, he was transferred to Wende. *See* Docket Item 1 at 8.

In "April/May 2020," Jones contracted COVID-19 when then-Superintendent Eckert "allowed his staff to infect a[n] inmate[,] . . . caus[ing Jones] to get sick." Docket Item 13 at 15, 22. In fact, "for most of the pandemic," Eckert "did not follow protoc[ol] for [the] contagious [COVID-19] outbreak": he "did not lock down the facility, . . . test his staff[,] or enforce mask wearing." *Id.* at 15.

"Once the staff became aware [that Jones] had [COVID-19, he] was moved . . . [to] the facility hospital." *Id.* at 22. Sergeant Pfonner, "the supervisor of that area," "placed [Jones] in a cell that had fecal matter thrown all over the walls." *Id.* "When [Jones] told [] Pfonner about this fecal matter[, Pfonner] forced [Jones] to stay in that cell and tried to force [Jones] to clean the cell while [Jones] had [COVID-19]." *Id.* After

---

[1] This Court previously deemed Docket Item 25 to be the second amended complaint and "the operative pleading" in this action. Docket Item 35 at 2-3 n.3. But it also "construe[d] [the] second amended complaint to include" certain allegations in the first amended complaint "to the extent that they are more detailed than those in the second amended complaint." *Id.* at 5 n.4.

The following facts therefore are taken primarily from the first and second amended complaints, Docket Items 13 and 25, and they are viewed in the light most favorable to Jones, *see Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016) (in deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court "accept[s] all factual allegations as true and draw[s] all reasonable inference in favor of the plaintiff"). The Court recounts only the facts relevant to the instant motion to dismiss.

Jones refused, Pfonner "order[ed] his staff to stop feeding [Jones]." *Id.* Pfonner also "would not allow the medical staff to see [Jones] while [he] was sick." *Id.*

At some point, Pfonner "told [Jones] that [Pfonner] hope[d Jones] would hurry up and die." Docket Item 25 at 7. After Pfonner "persuaded [Jones] to kill [him]self," Jones "became suicidal" and "tried to hang [him]self." *Id.*

"[F]rom September 2020 to December 2020[, Jones] was housed in the SHU,"[2] which was supervised by Sergeant Bizub. Docket Item 13 at 17. Jones told Bizub "many times" that the SHU staff was "harassing" Jones, denying him "mental health and medical attention," and "making [him] sleep on a metal frame with no mattress."[3] *Id.* But Bizub "allow[ed] his staff to torment [Jones]," *id.*, and even "encourage[d] them to do everything they did," Docket Item 25 at 6.

Throughout Jones's time at Wende, Eckert "was well aware" of Jones's situation "because [Jones] wrote [Eckert] grievance[]s about everything that [Jones] was going through." Docket Item 13 at 13. Jones "directly" notified Eckert that the Wende staff was, among other things, "verbally abusing [Jones,] [] forcing [Jones] to sleep in a cell without a mattress" that was "full of another inmate[']s fecal matter," and denying Jones "proper medical attention." *Id.* Jones "also wrote [Deputy Superintendent ] Brown to tell him about his staff," but Brown "encouraged his staff to continue to harass [Jones]."[4] *Id.*

---

[2] The SHU—short for the "special housing unit"—houses inmates "for disciplinary or protective purposes." *See Malik v. Miller*, 679 F. Supp. 268, 269 (W.D.N.Y. 1988).

[3] Butcher, Hyland, and Killinger were among the officers who harassed Jones while he was in the SHU. Docket Item 13 at 18-20; Docket Item 25 at 1-6.

[4] Jones also alleges that Brown failed to protect him from a sexual assault by another inmate. Docket Item 13 at 21.

at 21; *see* Docket Item 25 at 7-9 (alleging that after Jones wrote to Brown about harassment and threats by Officers Ball and Janese, Brown did not take any action).

## LEGAL PRINCIPLES

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

## DISCUSSION

This Court previously screened the complaint and amended complaints and allowed the following claims to proceed: a due process claim against Gabel; retaliation claims against Hyland, Killinger, Eckert, Janese, Ball, and Brown; conditions of confinement claims against Hyland, Killinger, Bizub, Eckert, and Pfonner; inadequate medical care claims against Pfonner, Eckert, Bizub, Hyland, Killinger, Butcher, and Ball; a failure to protect claim against Brown; a sexual abuse claim against Butcher; discrimination claims against Hyland and Killinger; and mail interference claims against Hyland, Killinger, and Butcher.[5]  Docket Items 10, 14, 35.

---

[5] The Court notes that dismissal under Federal Rule of Civil Procedure 12(b)(6) may still be appropriate notwithstanding a court's earlier finding that the complaint was

The defendants now have moved to dismiss the following claims because the named defendants were not personally involved in the alleged denial of Jones's rights: (1) all claims against Eckert; (2) all claims against Bizub; and (3) the retaliation claim against Brown.  Docket Item 41-1 at 7.  They also argue that Jones has failed to state a viable claim for inadequate medical care against Pfonner or a viable claim based on conditions of confinement against Eckert.  *Id.* at 3.

## I.   PERSONAL INVOLEMENT

 "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States."  *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)).  To establish liability against a government official under section 1983, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'"  *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676).  It is not enough to assert that the defendant is a "link[] in the prison['s] chain of command."  *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004).  Moreover, the theory of *respondeat superior* is not available in a section 1983 action.  *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003).  Instead, "[t]he violation must be established against the supervisory official directly."  *Tangreti*, 983 F.3d at 618.

---

not "frivolous" for purposes of section 1915(e)(2).  *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995).

Furthermore, "an allegation that an official ignored a prisoner's letter of protest . . . is insufficient to hold that official liable for the alleged violations." *Cromwell v. Hendel*, 2022 WL 16540353, at *5 (W.D.N.Y. Oct. 28, 2022) (citation omitted). "In other words, the fact that an official ignored a letter alleging unconstitutional conduct is not enough to establish personal involvement in that constitutional violation." *Id.* (citation and internal quotation marks omitted).

The defendants argue that Jones "has failed to sufficiently plead [the] personal involvement" of Eckert and Bizub in any claim and of Brown in the retaliation claim. Docket Item 41-1 at 7.

### A.   Eckert

Jones makes two sets of allegations against Eckert. First, he alleges that Eckert "did not follow protoc[ol]" during the COVID-19 pandemic, which ultimately caused Jones to contract the virus. Docket Item 13 at 15. More specifically, Eckert allegedly "did not lock down" Wende, did not "test his staff," and did not "enforce mask wearing." *Id.* Second, Jones alleges that he wrote grievances to Eckert informing him that Wende staff were harassing Jones and violating Jones's rights and that Eckert did not stop the violations. *Id.* at 13.

The Court previously allowed Jones's inadequate medical care and conditions of confinement claims against Eckert to proceed on the basis that Eckert "did not follow health protocols during the COVID-19 pandemic." Docket Item 14 at 9. But "[t]o establish a violation of [section] 1983 by a supervisor," such as Eckert, "the plaintiff must establish a deliberate, intentional act on the part of the defendant to violate the plaintiff's legal rights." *Tangreti*, 983 F.3d at 618 (citation omitted). Jones does not

6

allege such a "deliberate, intentional act" in connection with Eckert's handling of the COVID-19 pandemic.  For example, he does not allege that Eckert explicitly told Wende staff that they did not need to wear masks.  He merely alleges that Eckert was not vigilant in supervising his employees' compliance with COVID-19 protocols.  Those allegations do not establish Eckert's personal involvement in Jones's inadequate medical care and conditions of confinement claims.

Likewise, Jones does not allege that Eckert was personally involved in the harassment and retaliation that Jones allegedly suffered at Wende.  Even in response to the motion to dismiss, Jones says only that Eckert "did nothing to control his staff and put a[n] end to the cruel and unusual punishment" that Jones experienced.  Docket Item 43 at 5.  But Eckert's role as a "link[] in the prison['s] chain of command" does not establish his personal involvement his employees' conduct.  *See McKenna*, 386 F.3d at 437.  Nor does Eckert's awareness of Jones's situation establish Eckert's personal involvement in the retaliation and harassment by his subordinates.  *See Cromwell*, 2022 WL 16540353, at *5.

Jones's claims against Eckert therefore are dismissed because Jones does not allege that Eckert was personally involved in the events giving rise to Jones's claims.

### B.     Bizub and Brown

Jones alleges that he told Bizub "many times" that the SHU staff was harassing him, denying him medical care, and forcing him to sleep on a metal frame without a mattress.  Docket Item 13 at 17.  He says that Bizub did nothing to stop the SHU officers from violating Jones's rights, *id.,* and that Bizub even "encourage[d]" the harassment and the continuation of the inadequate housing conditions, Docket Item 25

at 6.  Similarly, Jones alleges that he wrote to Brown about the officers who harassed

him and that instead of intervening to prevent the harassment, Brown "encouraged his

staff to continue to harass [Jones]."  Docket Item 13 at 21; *see* Docket Item 25 at 7-9.

Allegations that Bizub and Brown failed to stop the officers they supervised from

harassing Jones are not sufficient to establish Bizub's and Brown's personal

involvement.  *See Cromwell*, 2022 WL 16540353, at *5.  But Jones alleges more—that

Bizub and Brown encouraged the harassment and that Bizub encouraged the officers

he supervised to house Jones in inadequate conditions.  In other words, Jones alleges

that Bizub and Brown actually participated in the unconstitutional conduct that injured

him.  And when those allegations are accepted as true—as they must be on a motion to

dismiss—that is sufficient to establish Bizub's and Brown's personal involvement in the

illegal behavior.

The defendants' motion to dismiss the claims against Bizub and Brown for lack of

personal involvement therefore is denied.

## II.    DELIBERATE INDIFFERENCE CLAIM AGAINST PFONNER

A claim of inadequate medical care rises to the level of an Eighth Amendment

violation only when a defendant, operating under color of law, was "deliberate[ly]

indifferen[t]" to the plaintiff's serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97,

104-05 (1976).  A serious medical need exists when "the failure to treat a prisoner's

condition could result in further significant injury or the unnecessary and wanton

infliction of pain."  *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (quoting

*Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).  "An official acts with the

requisite deliberate indifference when the official 'knows of and disregards an excessive

risk to inmate health or safety.'"  *Chance*, 143 F.3d at 702 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

The defendants argue that Jones "has failed to sufficiently plead that Pfonner was deliberately indifferent to his medical needs."[6]  Docket Item 41-1 at 8-9.  More specifically, they say that Jones has not alleged details establishing deliberate indifference, such as "the manner in [which] he was denied treatment, what medical staff was prohibited from treating him, what treatment was denied, whether said unspecified treatment was medical necessary[,] or the manner in which said unspecified treatment ultimately impacted him."  *Id.* at 9.  Jones's response does not provide much more detail about Pfonner's denial of medical care.  *See* Docket Item 43 at 3-4.  But Jones does allege that Pfonner "would not allow [him] to receive medical attention . . . while [Jones] was fighting for his life and battling COVID-19."  *Id.*

That allegation—while not very detailed—allows the Court to draw a reasonable inference that Pfonner acted with deliberate indifference when he denied Jones medical care.  Jones's case of COVID-19 apparently was so serious that it endangered his life.  So it is reasonable to assume that Pfonner, the supervisor of the hospital ward, knew about Jones's condition.  In that circumstance, the denial of any medical care to a person fighting a deadly virus would constitute deliberate indifference.

The defendants' motion to dismiss the inadequate medical care claim against Pfonner therefore is denied.

---

[6] The defendants also argue that Jones has "failed to reallege any allegations of medical deliberate indifference against Pfonner in the [second amended complaint]." Docket Item 41-1 at 7.  But because Jones is proceeding *pro se*, the Court deems the second amended complaint to include the more detailed allegations included in the first amended complaint.  *See* Docket Item 35 at 5 n.4.

## **CONCLUSION**

For the reasons stated above, the defendants' motion to dismiss, Docket Item 41, is GRANTED in part and DENIED in part.  All claims against Eckert are dismissed, and the Clerk of the Court shall terminate Eckert as a defendant to this action.  But Jones's retaliation claim against Bizub and Brown, his conditions of confinement claim against Bizub, and his inadequate medical care claim against Pfonner may proceed with the remainder of Jones's claims.  The defendants shall answer the second amended complaint within **30 days of the date of this order**.


SO ORDERED.

Dated:   October 16, 2023
              Buffalo, New York


 */s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE